HURLEY, Judge,
dissenting:
I dissent because I believe that plaintiffs’ jurisdictional allegations are sufficient to withstand a motion to dismiss.
Plaintiffs’ complaint alleged that Sanyei displayed, marketed and/or sold the toy gun involved in this suit, and distributed or retailed the toy. It further alleged that Sanyei invited an Eagle representative to Hong Kong to view various goods available for purchase, and that Sanyei knew the goods offered for sale would ultimately be shipped to Florida. Moreover, Sanyei was alleged to have shipped goods to Florida on many occasions and to have derived substantial income from sales in Florida.
Affidavits and depositions filed in support of these jurisdictional allegations show that Eagle purchased about 752 dozen of the toy guns from Sanyei, as well as many other items. Eagle places between 100 to 250 purchase orders per year with. Sanyei, generating between $520,000 to $900,000 in annual sales. Significantly, each of the 100 to 250 purchase orders signed by Eagle and Sanyei contained the following provision:
Vendor hereby consents to in personam jurisdiction of vendor in any court where any action, claim or suit based upon any cause hereunder is prosecuted, and further agrees that service of summons may be made upon vendor by mail addressed, postage prepaid, to vendor’s last known address.
Sanyei obviously understood that it was doing business in Florida. Its consent to Florida judicial resolution of disputes with Eagle is compelling evidence of this fact.
Sanyei, however, argues that the Florida long-arm does not reach it because it is not the manufacturer or seller of the toy gun. Rather, Sanyei claims it is merely a shipper *1218 or a broker. I reject this characterization because the evidence clearly establishes that Sanyei was a seller of the toy to Eagle, notwithstanding the labels attached by Eagle and Sanyei to their business relationship. In reaching this conclusion, I rely primarily on the uncontroverted deposition testimony of John Weil, President of Eagle, who described Sanyei as a trading company that acted on its behalf in the Orient by negotiating prices with foreign manufacturers. According to Weil, Eagle representatives travel to Hong Kong and meet with Sanyei representatives in their showrooms. There Eagle selects merchandise and places purchase orders with Sanyei. Sanyei, in turn, buys the ordered goods from a foreign manufacturer, purportedly standing as Eagle’s “agents with the factory.” Eagle reimburses Sanyei for the cost of the goods and pays it an additional “commission” or percent of the cost.[1] Thus, Sanyei purports to stand as a broker for an American buyer of foreign goods.
In my view, Sanyei is nothing more than a middleman which buys and resells goods at a profit. Given the substantial volume of goods it sells and ships to Florida businesses and the handsome pecuniary benefits it derives therefrom, Sanyei is clearly conducting business in Florida so as to subject it to long-arm jurisdiction under section 48.193(l)(a).[2]
Whether a nonresident is conducting business in Florida for purposes of the Florida long-arm statute turns on the nature, not the extent, of the nonresident’s activities in Florida. Oriental Imports & Exports v. Maduro & Curiel’s, 701 F.2d 889 (11th Cir.1983). The test is whether the activities of the nonresident corporation, considered collectively, show a general course of business activity in Florida for pecuniary benefit. April Industries, Inc. v. Levy, 411 So.2d 303 (Fla.3d DCA 1982). This court has previously held that the promotion and solicitation of sales in Florida is sufficient to confer personal jurisdiction over foreign businesses. See Shoei Safety Helmet Corp. v. Conlee, 409 So.2d 39 (Fla. 4th DCA 1981), appeal dismissed, 421 So.2d 518 (Fla.1982). I would apply the same principle here and hold that the motion to dismiss should have been denied because Sanyei has failed to negate plaintiffs’ allegations that it derived substantial revenue from direct sales to a Florida business entity. See also Elmex Corp. v. Atlantic Federal Savings & Loan Association of Fort Lauderdale, 325 So.2d 58 (Fla. 4th DCA 1976); Sayet v. Interstate Blood Bank, Inc., 245 So.2d 142 (Fla. 3d DCA 1971).

. Weil described the payment arrangement as follows:
We add the percent that they charge us to the cost of what the factory charges. So if the cost is a dollar and their percent is six percent, we pay them 1.6 in total.

. Section 48.193(l)(a), Florida Statutes (1983), provides:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
(a) Operates, conducts, engages in, or carries on a business or business venture in this state or has an office or agency in this state.